DAVID MARA (SB# 230498)
JAMIE SERB (SB# 289601)
TONY ROBERTS (SB# 315595)
dmara@maralawfirm.com
jserb@maralawfirm.com
troberts@maralawfirm.com
**MARA LAW FIRM, PC**
2650 Camino Del Rio North, Suite 205
San Diego, CA  92108
Telephone: (619) 234-2833
Facsimile: (619) 234-4048

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTINA MCCONVILLE on behalf of herself, all others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>vs.<br><br>RENZENBERGER, INC., and DOES 1-10,<br><br>Defendants. | Case No. 2:17-cv-02972-EMO-JS<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:    August 20, 2020<br>Time:   10:00 a.m.<br>Judge:  Hon. Fernando M. Olguin<br>Courtroom:  6D<br><br>Complaint Filed: April 14, 2016 |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on August 20, 2020 at 10:00 a.m., or as soon thereafter as the matter can be heard in Courtroom 3 of the above entitled courthouse located at 350 W. 1st Street, Los Angeles, California 90012, Plaintiff KRISTINA MCCONVILLE (hereinafter "Plaintiff"), will move this Court for an order granting Plaintiff's Motion for Final Approval of Class Action Settlement.

This Motion is made pursuant to pursuant to Federal Rule of Civil Procedure 23(h) and the Court's Order granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement. This Motion is based upon this notice, the accompanying Memorandum of Points & Authorities filed herewith, the accompanying Declaration of David Mara, Esq. filed herewith, the Declaration of Plaintiff Kristina McConville, the Joint Stipulation and Settlement Agreement and all exhibits thereto, the Court's Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement, the filings on record in this case, and upon such further evidence, both documentary and oral, that may be presented at the hearing of this motion.

Dated: July 24, 2020

**MARA LAW FIRM, PC**

By: /s/ *Jamie Serb* 
    Jamie Serb, Esq.
    Attorneys for Plaintiff

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND ..............................2

   a.   Investigation, Motions, and Settlement Negotiations ..................3

III. SUMMARY OF SETTLEMENT .........................................................4

   a.   The Proposed Class ......................................................................4

   b.   Settlement Terms .........................................................................5

       i.   Payment to Settlement Class Members ...............................5

       ii.  Uncashed Checks ................................................................7

       iii. Distribution of Funds .........................................................8

       iv. Release of Claims by Settlement Class Members ...............8

IV.  THE SETTLEMENT NOTICE PROCESS ..........................................13

   a.   Dissemination of the Class Notice ..............................................13

   b.   No Objection and No Requests for Exclusion..............................13

V.  DISCUSSION ......................................................................................14

   a.   The Settlement Meets the Standards Governing Final Approval ...........14

   b.   The Settlement was a Result of Arm's-Length Negotiations ...................15

   c.   In re Bluetooth Factors are not Present Here ..................................16

   d.   The Settlement is Fair ..................................................................16

   e.   Sufficient Discovery and Investigation Has Occurred...........................19

   f.   Class Counsel Have Extensive Experience Acting as Class Counsel ......19

   g.   The Class Members' Response to the Settlement is Further Evidence That the Settlement is Fair and Reasonable ................................................20

   h.   The Court Should Approve the Settlement Administration Fee .............20

   i.   The Court Should Approve the PAGA Payment to the LWDA .............20

VI.  CONCLUSION ....................................................................................21

1

# TABLE OF AUTHORITIES

2

**Cases**

3    *Augustus v. ABM Security Services, Inc.*,

4        2 Cal. 5th 257, 269 (2016) ...................................................17

5    *Boyd v. Bechtel Corp.*, .

6        485 F. Supp. 610, 622 (N.D. Cal. 1979) .............................15

7    *Brinker Restaurant Corp. v. Superior Court*

8        (2012) 53 Cal.4th 1004................................................17, 19

9    *Class Plaintiffs v. Seattle*,

10        955 F.2d 1268, 1276 (9th Cir. 1992)...................................14

11    *H&R Block Stores, Inc. v. Visa U.S.A., Inc.*,

12        396 F.3d 96, 116 (2d Cir. 2005);.........................................15

13    *Hanlon v. Chrysler Corp.*,

14        150 F.3d 1011, 1026 (9th Cir. 1998)..............................14, 17

15    *Heritage Bond Litigation*,

16        2005 WL 1594403................................................................14

17    *In re Bluetooth Headset Products Liability Litigation*,

18        654 F.3d 935, 946 (9th Cir. 2011) .................................15, 16

19    *Joel A. v. Giuliani*,

20        218 F.3d 132, 138 (2d Cir. 2000).........................................14

21    *Kirkorian v. Borelli*,

22        695 F. Supp. 446, 451 (N.D. Cal. 1988) .............................15

23    *Linney v. Cellular Alaska P'ship*,

24        151 F.3d 1234, 1242 (9th Cir. 1998)...................................16

25    *Mandujano v. Basic Vegetable Products, Inc.*,

26        541 F. 2d 832, 837 (9th Cir. 1976)......................................19

27    *Marshall v. Holiday Magic*, *Inc.*,

28        550 F.2d 1173 (9th Cir. 1977)..............................................16

*Morillion v. Royal Packing Co.,*

    22 Cal.4th 575, 584 (2000) ...................................................................18

*Officers for Justice v. Civil Service Comm. of City and County of San Francisco,*

    688 F. 2d 615, 625 (9th Cir. 1982)........................................................16

*Roderick Wright, et al v. Renzenberger, Inc.,*

    13-cv-6642 FMO (AGRx).......................................................................2

*Rodriguez v. West Publishing Corp.,*

    563 F.3d 948 (9th Cir. 2009).................................................................14

*Van Ba Ma v. Covidien Holding, Inc.,*

    2014 U.S. Dist. LEXIS 76359, *6-7 (C.D. Cal. 2014) .........................16

**Statutes**

Federal Rule of Civil Procedure 23 .........................................................13

Plaintiff Kristina McConville ("Plaintiff"), former employee for Defendant Renzenberger, Inc. ("Defendant") (collectively the "Parties"), submits this Motion for Final Approval of Class Action Settlement.

## I.    INTRODUCTION

Plaintiff respectfully requests that this Court enter an Order granting Final Approval of the Class Action Settlement for which this Court preliminarily approved on December 2, 2019.

As set forth in Plaintiff's Preliminary Approval Motion, this is a $2,450,000 Gross Settlement Amount ("GSA") achieved on behalf of 4,012[1] Class Members. This Class consists of all persons who are or have been employed by Renzenberger as Drivers in the State of California at any time between April 14, 2012 through December 2, 2019 (the date of Preliminary Approval). The Settlement represents a fair, adequate, and reasonable resolution to this litigation, as it provides definite and significant recovery in light of the risks of further litigation, with an estimated average payment of $422.71 and high payment of $3,320.53. The Parties contend the proposed Settlement is reasonable in light of the strengths of Plaintiff's case, risks of further litigation, and the estimated values of Plaintiff's claims at trial. The fact that none of the funds revert to Defendant further increases the value of this Settlement.

The Settlement represents a substantial recovery for the Class, and a well-crafted compromise of the divergent positions of the Parties. Further, the parties did not reach the Settlement until after the parties exchanged significant data and documents regarding the claims, reviewed Defendant's financial documents, and engaged in considerable settlement negotiations. Each side evaluated the strengths and weaknesses of the claims, and the defenses thereto, and independently concluded that this Settlement represents a responsible means of addressing the Plaintiff's claims and the Defendant's defenses.

---

[1] *See* Declaration of Bryan Valdez ("Valdez Dec.") on behalf of CPT Group, Inc. ("CPT") ¶ 9.

This recovery represents a positive outcome for the Class Members, all of whom may normally not possess the means to individually pursue his or her own claims. Therefore, for all the of the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the proposed settlement, as well as approve the request for attorneys' fees, costs, and enhancement payment discussed in Plaintiff's accompanying Motion for Attorneys' Fees (Dkt. #84).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On April 14, 2016, Plaintiff filed a putative wage and hour class action against Renzenberger in Sacramento County Superior Court (Case No. 34-2016-00193086). Plaintiff's complaint alleges claims for: (1) failure to pay all straight time wages; (2) failure to pay overtime; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) knowing and intentional failure to comply with itemized employee wage statement provisions; (6) failure to pay all wages due at the time of termination of employment; and (7) violation of the Unfair Competition Law. *See* Dkt. No. 1-3. Plaintiff brought this action on behalf of "all persons who are employed or have been employed by Defendants in the State of California as hourly, non-exempt truck workers, industrial truck workers, industrial truck drivers, industrial vehicle drivers, industrial workers, and/or other similar job designations and titles during the period of the relevant statute of limitations." *Id.* at 10.[2]

On May 18, 2016, Renzenberger removed the action to the United States District Court for the Eastern District of California, which was subsequently transferred per stipulation to the United States District Court for the Central District of California on April 18, 2017. *See* Dkt. Nos. 1 and 20. Plaintiff has also filed a

---

[2] *Roderick Wright, et al v. Renzenberger, Inc.,* 13-cv-6642 FMO (AGRx) was filed on July 15, 2013, alleging similar claims. ("*Wright* Action") On March 4, 2014, a Second Amended Complaint was filed in *Wright*, limiting the claims to rest periods, minimum wages, overtime, waiting time penalties, wage statements and unfair business practices. The *Wright* Action certified the following classes: Separate Pay Class, Pay Averaging Class, Wage Statement Class, Waiting Time Penalty Class, and Rest Break Class. The *Wright* Plaintiffs were also successful on a Summary Judgment Motion for the claims pertaining to these certified classes. A proposed settlement in *Wright* is also before this Court seeking contemporaneous approval. This settlement and the settlement in *Wright* were achieved after significant expert investigation into Renzenberger's financial ability to pay the damages that could be proven in this case if Plaintiff and the Class obtained a judgment in their favor. The settlement of this matter is contingent upon the contemporaneous approval of the settlement in *Wright*, and vice versa.

letter with the Labor and Workforce Development Agency ("LWDA"), notifying the agency of her claims under the Private Attorneys' General Act ("PAGA"). *See* Declaration of David Mara ("Mara Dec."), ¶ 13.

On June 4, 2019, Plaintiff filed her First Amended Complaint ("FAC"), adding a claim for PAGA penalties, which arise under the same facts pled in the original complaint. *See* Dkt. No. 71. On September 3, 2019, Plaintiff filed a Second Amended Complaint ("SAC"), adding a claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., which arises under the same facts plead in the original complaint. *See* Dkt. No. 81.

On December 2, 2019, the Court granted preliminary approval of the proposed class action settlement. Plaintiff filed a motion for attorneys' fees, costs, and class representative enhancement on February 14, 2020, which is set for hearing with the instant motion. During the notice period, it was discovered that 584 *Wright* class members were also Class Members here, but were inadvertently left out of the class data provided to CPT for the notice mailing. Thus, the Parties filed a stipulation with the Court, requesting a continuance of the final approval hearing to provide these individuals with notice and to send out an explanatory letter to Class Members regarding the continuance with an updated estimated settlement share amount. The Court granted the Parties' stipulation. Dkt. No. 86.

### a.  Investigation, Motions, and Settlement Negotiations

Discovery and litigation in this matter was extensive. After filing, all Parties conducted discovery. Plaintiff propounded two sets of document requests and one set of interrogatories. This led to the production of Renzenberger's policies and procedures, as well as the class-wide production of contact information, time and wage records. Renzenberger propounded two sets of document requests and interrogatories. Renzenberger deposed Plaintiff on September 22, 2017. Plaintiff deposed Renzenberger's 30(b)(6) witness, Lawrence Purnell, on November 14, 2017. Renzenberger also deposed Plaintiff's expert, Jarrett Gorlick, on February 1, 2018. Mara Decl. ¶ 14.

Plaintiff filed a motion to certify the class, which Renzenberger opposed. (Dkt. Nos. 49-53) Both Parties filed cross motions for summary judgment. (Dkt. Nos. 36-37; 43-45) On September 21, 2018, the Parties filed a notice of settlement before the Court issued rulings on certification or summary judgment. (Dkt. No. 58) After briefing these issues, Plaintiff hired an expert to review Renzenberger's financials and investigated Renzenberger's ability to pay any judgment that could be reached in this matter, which led to further document production and analysis. Mara Decl., ¶ 15.

On November 28, 2017, the Parties engaged in a private mediation before the Honorable Steven Denton of Judicate West in San Diego. The Parties were unable to reach a settlement at that time and continued to pursue litigation, by filing motions on certification and summary judgment. After fully briefing these issues before the Court, the Parties continued settlement negotiations. After extensive expert analysis of Renzenberger's financial documents, Plaintiff's counsel determined Renzenberger would not have the financial ability to pay the damages that could be later proven if the Class obtained a favorable judgment (either at trial or by way of summary judgment). Based on these considerations, Plaintiff has determined that the Settlement set forth in the Agreement is a fair, adequate, and reasonable amount, and is in the best interests of the Class Members. The Parties met and conferred regarding all terms of the settlement and finalized the Agreement, as reflected in the Parties' Stipulation and Settlement of Class Action Claims that the Parties now ask the Court to finally approve. Mara Decl., ¶ 16, **Exh. A** (Settlement Agreement).

## III.    SUMMARY OF SETTLEMENT

The principal terms of the Agreement are as follows:

### a.    **The Proposed Class**

The Class is comprised of: all persons who are or have been employed by Renzenberger as Drivers in the State of California at any time from April 14, 2012, through the date the Court grants Preliminary Approval ("Class Period"). There are

4,012[3] Class Members within this definition. Mara Decl., **Exh. A**.

### b. Settlement Terms

Pursuant to the Agreement, Renzenberger shall pay a **non-reversionary** $2,450,000 ("Gross Settlement Fund"). This is the total amount Renzenberger can be required to pay under this Agreement. No portion of the Gross Settlement Fund will revert to Renzenberger for any reason. Subject to the Court's final approval, the following deductions will be made from the Gross Settlement Fund: (1) $5,000 to Plaintiff/Class Representative Kristina McConville, to compensate her for his time, effort, and risks she undertook in pursuing this lawsuit; (2) $612,500 (25% of the Gross Settlement Fund) to Class Counsel for attorneys' fees to compensate them for their work on the lawsuit, as well as any work remaining in securing Court approval of the settlement, administration of the settlement, and obtaining dismissal of the lawsuit; (3) $26,589.68 to Class Counsel for reimbursement of their litigation costs (originally estimated not to exceed $40,000); (4) $35,000 to CPT Group, Inc. to compensate it for its work performed and to be performed in administering the settlement; and (5) $75,000 to the California Labor and Workforce Development Agency ("LWDA") for its 75% share of the $100,000 PAGA Payment. Mara Decl., **Exh. A**.

### i. Payment to Settlement Class Members

After all deductions have been made from the Gross Settlement Fund, an estimated Net Settlement Fund of $1,695,910.32, less taxes, will be distributed to Settlement Class Members. The Net Settlement Fund will be divided into two Payout Funds: (1) the Class Payout Fund and (2) the FLSA Payout Fund. All Settlement Class Members shall automatically be paid individual settlement shares out of the Class Payout Fund. Only those Settlement Class Members who return a signed FLSA Opt-In Form will also receive a settlement payment from the FLSA Payout Fund. Mara Dec. ¶ 17.

Each Settlement Class Member will receive a proportionate share of the Net

---

[3] Valdez Dec. ¶ 9.

5

Settlement Fund which will be calculated as follows:

- **Class Payout Fund:** Ninety percent (90%) of the Net Settlement Fund will be allocated to the Class Payout Fund. Settlement Class Members will automatically receive their pro rata settlement share from this fund. Individual Settlement Shares from the Class Payout Fund will be distributed based on the number of weeks each Class Member worked as a Driver during the Class Period. The number of workweeks for each Class Member will be determined by adding all the calendar days within the inclusive dates of employment and dividing that number by seven. Any partial workweek will be rounded up to the nearest full workweek. This shall be considered each Class Member's "Workweek Figure." Class Members' Individual Settlement Shares will be calculated by dividing the Class Payout Fund by the total of all Class Members' Workweek Figures to arrive at a Per-Workweek Amount. For example, a Class Member who worked 365 days would have a Workweek Figure of 52 weeks. If the PAGA Payment was $100,000, and the Total Workweeks for all Class Members was 10,000, this would result in a $10 Per-Workweek Amount. Then, the above Class Member would be eligible for $520 for 52 workweeks. This would be the Settlement Class Member's Individual Settlement Share from the Class Payout Fund. All Settlement Class Members will automatically receive an Individual Settlement Share from the Class Payout Fund of his or her Workweek Figure multiplied by the calculated Per-Workweek Amount;

- **FLSA Payout Fund:** Ten percent (10%) of the Net Settlement Fund will be allocated to the FLSA Payout Fund. Only those Settlement Class Members who submit a timely and valid FLSA Opt-In Form shall be deemed to have opted into the FLSA claims, will be deemed to have released the claims defined in the Federal Release, and shall receive a pro-rata settlement share from the FLSA Payout Fund. To arrive at these amounts, the FLSA Payout Fund will be distributed based on the number of weeks each Class Member worked as a Driver during the Class Period. The number of workweeks for each Class Member will be determined by adding all the calendar days within the inclusive dates of employment and dividing that number by seven. Any partial workweek will be rounded up to the nearest full workweek. This shall be considered each Class Member's "Workweek Figure." Class Members' Individual Settlement Shares from the FLSA Payout Fund will be calculated by dividing the FLSA Payout Fund by the total of all Class Members' Workweek Figures to arrive at a Per-Workweek Amount. For example, a Class Member who worked 365 days would have a Workweek Figure of 52 weeks. If the PAGA Payment was $100,000, and the Total Workweeks for all Class

Members was 10,000, this would result in a $10 Per-Workweek Amount. Then, the above Class Member would be eligible for $520 for 52 workweeks. This would be the Settlement Class Member's Individual Settlement Share from the FLSA Payout Fund. **Any portion of the FLSA Payout Fund that is unclaimed by Settlement Class Members shall become distributable on a pro-rata basis to those Settlement Class Members who returned timely, valid FLSA Opt-In Forms**.

Therefore, the value of each Settlement Class Member's individual Settlement Payments ties directly to the amount of weeks that he or she worked. Mara Dec. ¶ 18.

33.3% of each individual Settlement Payment is intended to settle claims for unpaid wages ("Gross Wage Portion") and the remaining 66.6% is intended to settle claims for penalties and interest ("Non-Wage Portion"). Both employer and employee taxes will be deducted from each Settlement Class Member's Gross Wage Portion of their Individual Settlement Share. *See* Mara Dec., **Exh. A** at ¶ 10(b).

No class members requested to be excluded from the settlement, resulting in 100% participation in the Settlement. Settlement Class Members claimed 59.5% or $100,138.84 of the FLSA Payout Fund, resulting in the pro-rata redistribution of the remaining unclaimed funds ($69,452.19) amongst Settlement Class Members who returned timely, valid FLSA Opt-In Forms. 100% of the Net Settlement Fund, less taxes, will be distributed to Settlement Class Members and no amount of this settlement will revert to Renzenberger. Valdez Dec. ¶ 15.

### ii. Uncashed Checks

Pursuant to the Agreement, any checks issued to Settlement Class Members shall remain valid and negotiable for 180-days from the date of their issuance. If any checks remain uncashed or not deposited by the expiration of the 180-day period after the Settlement Administrator mails the checks, the checks shall be cancelled. The funds corresponding to uncashed checks will be transmitted by the Settlement Administrator to the State of California's Controller's Office of Unclaimed Property. The checks will be deposited in the Settlement Class Members' name so that they may claim the funds at a future. The Parties feel that this is the most equitable course of action as Settlement Class Members who do not cash their settlement checks are

still bound by all of the terms of the Settlement. Transmitting the funds from the uncashed checks to the Unclaimed Property fund allows Settlement Class Members to obtain their portion of the Settlement from the Unclaimed Property Fund at a later date. The funds that are transmitted to the Unclaimed Property Fund will be held in the Settlement Class Member's name, leaving no residual funds. Mara Dec. ¶ 19.

Furthermore, any portion of the FLSA Payout Fund that is unclaimed by Settlement Class Members shall become distributable on a pro-rata basis to those Settlement Class Members who returned timely, valid FLSA Opt-In Forms leaving no residual funds. *See* Mara Dec., **Exh. A** at ¶ 10(b).

### iii.  Distribution of Funds

Renzenberger has deposited the Gross Settlement Fund with CPT. Subject to the Court finally approving the settlement, and given that there are no objections to the proposed Settlement, the Effective Date of the Settlement will be the date of the Court's Order finally approving the Settlement.[4] Therefore, within 14 days after the Effective Date, CPT will mail the Individual Settlement Share checks to Settlement Class Members. Within 7 banking days after the Effective Date, CPT will pay the Fees Award and Litigation Costs to Class Counsel, the Incentive Award to Plaintiff, and the LWDA's share of the PAGA Payment to the LWDA. Mara Dec. ¶ 20.

### iv.  Release of Claims by Settlement Class Members

In exchange for Renzenberger's promise to make the payments provided for in the Agreement, Plaintiff and the Settlement Class Members will release Renzenberger and its assignees, and each of their past or present officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants,

---

[4] "Effective Date" is the date by which this Settlement and the *Wright* settlement are finally approved. The Final Judgment becomes final upon the latter of: (a) if there are no objections to the Settlement by Class Members, the Effective Date shall be the date of the trial Court's order finally approving the Settlement; or (b) if an objection is timely made/asserted by a Class Member; and in addition, (1) the date affirmance of an appeal of the Judgment becomes final or the expiration of the time for filing a petition for review or certiorari of or as to the Final Judgment or of any Court of Appeals' decision relating to the Final Judgment and, if review is granted, the date of final affirmance of the Final Judgment following review pursuant to that grant; (2) the date of final dismissal of any writ of certiorari as to or appeal from the Judgment or the final dismissal of any proceeding on review of any Court of Appeals' decision relating to the Judgment; or (3) if no appeal is filed, the expiration date of the time for the filing or noticing of any appeal from the Judgment. *See* **Exhibit A** attached to the Mara Decl., ¶ H(1).

auditors, consultants, insurers and reinsurers, and their respective successors and predecessors in interest, subsidiaries, affiliates, parents and attorneys and all of their respective officers, directors, employees, administrators, fiduciaries, trustees and agents (the "Released Parties"), from the "Released Claims." For purposes of this Agreement, the "Released Claims" include all claims that **were or could have been pled based on the factual allegations in the operative complaint**, including without limitation, those having all of the characteristics below:

(a)     all claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever that arose from April 14, 2012 through [Preliminary Approval Date];

(b)     whether in tort, contract, or for violation of any state constitution, statute, rule or regulation, including state wage and hour laws;

(c)     whether for economic damages, non-economic damages, restitution, premium pay, penalties or liquidated damages;

(d)     arising out of, relating to, or in connection with:

(1) any and all facts, transactions, events, policies, occurrences, acts, disclosures, statements, omissions or failures to act, which are or could be the basis of claims: (a) that Renzenberger failed to pay all straight time wages; (b) that Renzenberger failed to pay all overtime pay; (c) that Renzenberger failed to provide Plaintiffs with meal periods and/or rest breaks, or failed to compensate Plaintiffs for all hours worked in connection with meal periods and/or rest breaks, in accordance with California law, including any claims for waiting time penalties, premium pay, or inaccurate wage statements based on the factual allegations contained in the Class Action; (d) that Renzenberger failed to compensate plaintiffs for all hours worked, including any claims for waiting time penalties, or inaccurate wage statements based on the factual allegations contained in the Class Action; (e) that Renzenberger failed to compensate plaintiffs for all wages due upon termination in a timely fashion; (f) that Renzenberger failed to provide the paystubs required by California law; (g) that Renzenberger failed to comply with any California state wage and hour laws, based

on the factual allegations contained in the Class Action; including any claims for waiting time penalties, premium pay, or inaccurate wage statements based on the factual allegations contained in the Class Action; (h) that Renzenberger failed to keep any and all records required by California law based on the factual allegations contained in the Class Action; (i) that Renzenberger failed to comply with Labor Code Sections 201-203, 206, 206.5, 226, 226.7, 510, 512, California Business & Professions Code Section 17200, and/or Wage Order 1-2001 based on the factual allegations contained in the Class Action; (j) any claims brought under California Labor Code Section 2699, the "Private Attorney General Act" based on the factual allegations contained in the Class Action; or (k) that Renzenberger owes wages, premium pay, penalties, interest, attorneys' fees or other damages of any kind based on a failure to comply with these state wage and hour laws and record keeping laws based on the factual allegations contained in the Class Action, at any times on or before the last day of the Class Period (whether based on California state wage and hour law, contract, or otherwise);

(e)     the causes of action asserted in the Class Action, including any and all claims for alleged failure to provide meal periods and/or rest breaks, or alleged failure to pay all wages and/or premium pay on termination of employment, or alleged failure to provide accurate wage statements, or for waiting time penalties or for premium pay and, as related to the foregoing, for alleged unlawful, unfair and/or fraudulent business practices under California Business and Professions Code § 17200, et seq.;

(f)     any other claims based on any factual allegations pled in this Class Action; and/or

(g)     This Release is based on the factual and legal claims asserted in Plaintiff's Complaint, filed on or about April 14, 2016, and only applies to those persons identified by the Released Parties as being a member of the Class in connection with the administration of this proposed settlement. Any person not identified by the Released Parties as being a member of the Class shall not and will

not be affected by this Release. Further, this Release does not apply to any claim that as a matter of law cannot be released, including but not limited to claims for indemnification pursuant to California Labor Code section 2802, unemployment insurance benefits, and workers' compensation claims.

(h)    The Class Members may later discover facts in addition to or different from those alleged in the operative complaint with respect to the subject matter of the Released Claims, but upon the Effective Date, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever settled and released any and all of the Released Claims, whether contingent or non-contingent, which now exist, or have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. *See* Mara Decl., **Exh. A** at ⁋ 3.

In addition to releasing the Released Parties from the Released Claims as outlined in subsection (a), Settlement Class Members, including Named Plaintiff, also release the Released Parties from the "Released Federal Law Claims." For purposes of this Agreement, the "Released Federal Law Claims" include all claims that were or could have been pled based on the factual allegations in the operative complaint, including without limitation:

(1)    any and all applicable federal law claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever, known or unknown, asserted or that might have been asserted; and

(2)    whether in tort, contract, or for violation of any federal constitution, statute, rule or regulation, including federal wage and hour laws, whether for economic damages, non-economic damages, restitution, penalties or liquidated damages, arising out of, relating to, or in connection with:

(i)    all federal law causes of action alleged in or that

could have been alleged in the Complaint based upon the facts pleaded in the Complaint under any theory of law, including but not limited to: failure to pay wages, including straight time and overtime wages under the FLSA; failure to provide rest periods; failure to timely pay wages owed; and/or

(ii)    any and all facts, transactions, events, policies, occurrences, acts, disclosures, statements, omissions or failures to act, alleged in or that could have been alleged in the Complaint, based upon the facts pleaded in the Complaint under any theory of law, which are or could be the basis of claims related to Renzenberger's alleged failure to failure to pay wages, including straight time and overtime under the FLSA; failure to provide rest periods; failure to timely pay wages owed; or other damages of any kind based on a failure to comply with any federal wage and hour laws, at any time during the Class Period (whether based on federal wage and hour law, contract, or otherwise).

The Settlement Class Members may hereafter discover facts in addition to or different from those alleged in the operative complaint with respect to the subject matter of the Released Federal Law Claims, but upon the Effective Date, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever settled and released any and all of the Released Federal Law Claims, whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

The Settlement Class Members agree not to sue or otherwise make a claim against any of the Released Parties that is related to the Released Federal Law Claims. *See* Mara Dec., **Exh. A** at ¶ 4.

12

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT

IV.    **THE SETTLEMENT NOTICE PROCESS**

a.    <u>Dissemination of the Class Notice</u>

The Court granted preliminary approval of the Settlement on December 2, 2019. (Dkt. # 83). At that time, CPT was appointed by the Court as the Settlement Administrator. CPT has complied with this Court's orders concerning dissemination of the Class Notice by first-class regular U.S. Mail. On December 16, 2019, Renzenberger sent the Class Data to CPT. Valdez Dec. ¶ 5. CPT performed a search for updated addresses in the Notice of Change of Address database. Thereafter, the Class Notice was mailed to 3,417 Class Members on January 15, 2020. Valdez Dec. ¶ 6.

During the notice period, the Parties discovered 584 individuals were not provided notice of this settlement (but were included in and provided notice of the *Wright* settlement). After obtaining a continuance of the final approval hearing, on May 4, 2020, CPT mailed out notice to the additional 584 Class Members and provided an explanatory letter to those Class Members who were already provided notice, providing them with the new date for the final approval hearing date and their updated estimated settlement share and extending them additional time to decide how they would like to respond to the settlement. *See* Valdez Dec. ¶¶ 9-10.

As of the date of this filing, 502 notices were returned by the U.S. Postal Service. CPT performed a Skip Trace on 473 returned notices without forwarding addresses. As a result of CPT's further skip trace efforts on all returned mail, 490 notices were re-mailed. Ultimately, a total of 99 notices were deemed undeliverable. Valdez Dec. ¶ 11.

b.    <u>No Objection and No Requests for Exclusion</u>

The deadline to submit an objection to the Settlement or a request for exclusion from the Settlement was July 3, 2020. Valdez Dec. ¶ 10. No objections have been filed with the Court or submitted to CPT and no requests for exclusion from the Settlement was received by CPT. *Id* at ¶¶ 13-14. Therefore, 100% of the Settlement Class Members are Settlement Class Members.

## V.    DISCUSSION

### a.  The Settlement Meets the Standards Governing Final Approval

Matters that have been filed as class actions require court approval before a settlement can be consummated. *See* Fed. R. Civ. Proc. ("FRCP") 23(e). FRCP 23(e) provides that any compromise of a class action must receive Court approval. The Court has broad discretion to grant approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). In determining whether a settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Heritage Bond Litigation*, 2005 U.S. Dist. LEXIS 13555, *9 (C.D. Cal. June 10, 2005) (*citing Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

Approval of a class action settlement involves a two-step process. In determining whether to grant final approval of the settlement, a court examines the terms for overall fairness and, in so doing, balances the following factors: the strength of the plaintiff's case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed; the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and, the reaction of the class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026.

Here, the proposed settlement was reached only after undertaking a robust factual and legal investigation into the claims and defenses in this lawsuit. These efforts culminated in the Parties reaching an agreement to settle. The settlement amount takes into consideration the risks with regard to certifying Plaintiff's claims, as well as difficulties associated with prevailing on the merits. In light of these risks, the settlement amount is well within the ballpark of reasonableness.

### b.  <u>The Settlement was a Result of Arm's-Length Negotiations</u>

The Ninth Circuit has shown longstanding support of settlements reached through arm's length negotiation by capable opponents. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth Circuit expressly opined that courts should defer to the "private consensual decision of the [settling] parties." *Id.* at 965, citing *Hanlon*, 150 F.3d at 1027. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *H&R Block Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005); se*e also Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) (opinion of experienced counsel is entitled to considerable weight); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of reasonableness).

On November 28, 2017, the Parties engaged in a private mediation before the Honorable Steven Denton of Judicate West in San Diego. The Parties were unable to reach a settlement at that time and continued to pursue litigation, by filing motions on certification and summary judgment. After fully briefing these issues before the Court, the Parties continued settlement negotiations. After extensive expert analysis of Renzenberger's financial documents, Plaintiff's counsel determined Renzenberger would not have the financial ability to pay the damages that could be later proven if the Class obtained a favorable judgment (either at trial or by way of summary judgment). Based on these considerations, Plaintiff has determined that the Settlement set forth in the Agreement is a fair, adequate, and reasonable amount, and is in the best interests of the Class Members. The Parties met and conferred regarding all terms of the settlement and finalized the Agreement, as reflected in the Parties' Stipulation and Settlement of Class Action Claims that the Parties now ask the Court to finally approve. Mara Decl., ¶ 21, **Exhibit A**.

### c. *In re Bluetooth* Factors are not Present Here

In *Bluetooth,* the Ninth Circuit articulated additional factors that need to be considered, especially where a settlement has been reached prior to formal class certification. *In re Bluetooth Headset Products Liability Litigation* ("*Bluetooth*"), 654 F.3d 935, 946 (9th Cir. 2011). As such, settlement agreements reached prior to class certification must withstand a higher level of scrutiny for signs of collusion or other conflicts of interest than ordinarily required under Rule 23(e). The three signs *Bluetooth* instructs trial courts to look for are:

1. When class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply rewarded;
2. When the parties negotiate a 'clear sailing' arrangement providing for the payment of attorney's fees separate and apart from class funds without objection by defendant;
3. When the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *Id* at 947.

This settlement passes the *Bluetooth* test. The NSA is approximately three times larger than the fees requested by Class Counsel, which is the accepted federal benchmark of 25% of the GSA. Additionally, any amount requested by Class Counsel and not awarded by the Court shall become part of the NSA and distributable to Settlement Class Members. Accordingly, unlike the settlement agreement in *Bluetooth,* the instant settlement cannot be said to arouse suspicion of collusion.

### d. The Settlement is Fair

When evaluating the settlement terms for purposes of ruling on whether to finally approve it, the Court is to review the strength of a plaintiff's case, including "the probable outcome of a trial on the merits of liability and damages as to the claims, issues, or defenses of the class and individual class members." *Van Ba Ma v. Covidien Holding, Inc.*, 2014 U.S. Dist. LEXIS 76359, *6-7 (C.D. Cal. 2014) (*citing Marshall v. Holiday Magic*, *Inc.*, 550 F.2d 1173 (9th Cir. 1977)). In ruling on final approval, the "fairness hearing is not to be turned into a trial or a rehearsal for trial on the merits." *Id.* (*quoting Officers for Justice v. Civil Serv. Comm'n of the*

*City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

There is no standard or benchmark for determining whether a settlement is fair. "Ultimately the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice v. Civil Service Comm. of City and County of San Francisco*, 688 F. 2d 615, 625 (9th Cir. 1982). A court should weigh the benefits that the settlement will realize for the class against the uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("...it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."); *see also Hanlon*, 150 F.3d at 1026 (When considering the fairness of a proposed class settlement, courts consider the strength of a plaintiff's case against the risk, expense, complexity and likely duration of further litigation.).

Plaintiff contends that Renzenberger failed to provide compliant meal and rest periods, pay all straight and overtime/FLSA wages owed. The claims for failure to pay all wages due at termination and failure to provide accurate itemized wage statements derive from and are dependent on the strength of the wage claim. Mara Decl. ¶ 22.

Under California law, employers must provide non-exempt employees, like the non-exempt employees involved here, with duty-free thirty (30) minute meal periods. Moreover, under California law, employers must provide non-exempt employees with duty-free ten (10) minute rest periods every four (4) hours or major fraction thereof. Plaintiff contends that Renzenberger implemented uniform practices and procedures that systematically fail to relieve employees of all duties for meal and rest periods. Mara Decl. ¶ 23. This violates *Brinker* and *Augustus'* mandate that employees must be provided with duty-free meal and rest periods. *See Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 269 (2016) ("Nonetheless, one cannot square the practice of compelling employees to remain at the ready, tethered by time and policy to particular locations or communications devices, with the requirement

to relieve employees of all work duties and employer control for 10-minute rest periods.") Accordingly, Plaintiff contends that drivers are not able to use their meal and rest period time for their own purposes and a meal and rest period premium vests in each shift worked. Mara Decl. ¶ 24.

Renzenberger contends that they provided drivers with compliant meal and rest periods at all times and contends that they have uniform policies and practices that provide drivers with duty-free meal and rest periods. Further, Renzenberger argues that neither meal nor rest periods are on-duty and that Class Members can use these breaks for their own purposes. Indeed, Renzenberger contends that its meal and rest period policies explicitly state that these breaks are uninterrupted and off-duty. Renzenberger asserts that it could and already has provided the Court with declarations from drivers which state that they received compliant meal and rest periods. Moreover, Renzenberger contends it paid meal period premiums when it was notified a meal period was missed or late, which would significantly reduce any potential damage award. Mara Decl. ¶ 25.

Under California law, employees must be paid for all hours worked. *Morillion v. Royal Packing Co.,* 22 Cal.4th 575, 584 (2000) ("[I]t is only necessary that the worker be subject to the control of the employer in order to be entitled to compensation."). Plaintiff contends that Renzenberger failed to pay drivers for time spent clocked out for meal periods, but under the duty to respond to their phones when Renzenberger calls. Plaintiff further contends that, as a result of its failure to pay all wages owed, Renzenberger failed to provide Class Members with accurate itemized wage statements and failed to pay formerly employed Class Members all of their final wages at the time of their separation from employment. Mara Decl. ¶ 26.

Renzenberger contends that, because its policies do not require drivers to remain on duty during meal periods, drivers are not owed any wages for the time they spent clocked out for meal periods. Therefore, Defendants contend they do not owe any additional wages, do not owe any waiting time penalties to formerly employed Class Members, and provided legally compliant and correct wage statements to Class

Members. Mara Decl. ⁋ 27.

Finally, as previously stated, Renzenberger contends that, if Plaintiff was successful in obtaining judgment on her claims, Renzenberger would be financially unable to pay it. After receiving, reviewing, and analyzing financial documents for the company and in consultation with Plaintiff's retained economic expert, Plaintiff and Plaintiff's counsel do not believe Renzenberger would have the financial ability to pay the damages that could be proven in this case at trial if the Class were able to obtain a judgment in its favor; even more so if Renzenberger paid a similar judgment in *Wright*. Mara Decl. ⁋ 28.

### e.  Sufficient Discovery and Investigation Has Occurred

Plaintiff submits and Renzenberger disputes that this case was factually and legally strong. This matter was settled after substantial discovery, which included written discovery that resulted in hundreds of thousands of pages of documents, Plaintiff's deposition, Renzenberger's 30(b)(6) deposition, and Plaintiff's expert's deposition. In addition, Plaintiff received Renzenberger's financial documents for expert analysis to aid in determining Renzenberger's ability to pay any potential judgment received in this matter. Thus, at the point the settlement was initially agreed to, no one was in a better position than Plaintiff's Counsel to understand the strengths and potential limitations of Plaintiff's case and to evaluate the reasonableness of the amount offered in settlement. Mara Decl. ⁋ 29.

### f.  Class Counsel Have Extensive Experience Acting as Class Counsel

Class Counsel's experience in complex class action matters is extensive. Mara Decl. ¶¶ 1-10. Indeed, Mr. Mara from the Mara Law Firm, PC was class counsel in *Hohnbaum et al. v. Brinker Restaurant Corp et al.,* which is the subject case in the landmark decision of *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004. Mara Decl. ¶ 4. Class Counsel have prosecuted numerous cases on behalf of employees for California Labor Code violations and thus are experienced and qualified to evaluate the class claims present in this case, and the defenses thereto, and to evaluate settlement versus trial on a fully informed basis. Mara Decl. ¶¶ 1-10.

This experience instructed Class Counsel on the risks and uncertainties of further litigation and guided their determination to endorse the proposed settlement.

### g. The Class Members' Response to the Settlement is Further Evidence That the Settlement is Fair and Reasonable

The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered in determining a settlement's fairness. *Mandujano v. Basic Vegetable Products, Inc.*, 541 F. 2d 832, 837 (9th Cir. 1976). Here, not a single Class Member has objected to the settlement or requested to be excluded from the settlement, resulting in a 100% participation rate in the settlement. The lack of objections and low number of requests for exclusion evidences the Class Members' endorsement of this non-reversionary settlement.

### h. The Court Should Approve the Settlement Administration Fee

The Parties agreed to hire CPT Group, Inc. ("CPT") as the Settlement Administrator, a choice the Court approved in conjunction with granting preliminary approval. CPT was responsible for mailing the Class Notice to Settlement Class Members, obtaining better addresses for undeliverable Class Notices, responding to Settlement Class Member inquiries, providing weekly status reports to all counsel, receiving all communications from the Class Members, and providing a declaration documenting its duties and responsibilities in administering the Class Notice of the Settlement. Mara Dec. ¶ 30. Following the grant of final approval, CPT will continue to calculate the payments to Settlement Class Members, calculate the withholding taxes, and transmit to the appropriate government agencies, send the individual Settlement Shares to Settlement Class Members, distribute other payments ordered by the Court, follow up with un-cashed checks, follow up with reminder postcards, and perform such other duties as described in the Agreement. Mara Decl. ¶ 31. CPT's fee of $35,000.00 for services rendered and to be rendered is fair and reasonable and should be granted.

### i. The Court Should Approve the PAGA Payment to the LWDA

The payment of $75,000 (75% of $100,000) to the LWDA for its share of the applicable penalties claimed under the California Labor Code's Private Attorney

General Act of 2004, as amended ("PAGA"), is reasonable under the circumstances. The Parties negotiated a good faith amount to the LWDA. The sum to be paid to the LWDA was not the result of self-interest at the expense of other Settlement Class Members. The LWDA was provided notice of the Settlement concurrently with the filing of the preliminary approval motion and the instant motion. Plaintiff did not receive a response or objection to the Settlement from the LWDA. Mara Decl. ¶ 32. Thus, Plaintiffs request the Court finally approve the sum of $75,000 for payment to the LWDA.

## VI.    CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court find the Settlement fair, reasonable, and adequate and grant final approval of the Settlement. Plaintiff further requests the Court approve the requested attorneys' fees, litigation costs, class representative enhancement payment, settlement administration fee, and PAGA payment. Last, Plaintiff respectfully requests the Court enter final judgment in this matter.

Dated: July 24, 2020                     MARA LAW FIRM, PC


                                         /s/ *Jamie Serb*
                                         Jamie Serb, Esq.

PLAINTIFF'S NOTICE OF MOTION AND MOTION
                                         FOR ATTORNEYS' FEES, COSTS, AND CLASS
                                         REPRESENTATIVE ENHANCEMENT