1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   KRISTINA MCCONVILLE, individually      )    Case No. CV 17-2972 FMO (JCx)
     and on behalf of herself and all other )
12   persons similarly situated,            )
                                            )
13                        Plaintiff,        )    **ORDER RE: FINAL APPROVAL OF CLASS**
                                            )    **ACTION SETTLEMENT**
14          v.                              )
                                            )
15   RENZENBERGER, INC.,                    )
                                            )
16                        Defendant.        )
     _____    )

17

18          Having reviewed and considered Plaintiff's Motion for Final Approval of Class Action

19   Settlement, (Dkt. 87, "Motion"), and Plaintiff's Motion for Attorneys' Fees, Costs, and Class

20   Representative Enhancement, (Dkt. 84, "Fees Motion"), and the oral argument presented during

21   the final fairness hearing held on August 20, 2020, the court concludes as follows.

22                              **BACKGROUND**

23          On April 14, 2016, Kristina McConville ("McConville" or "plaintiff") filed a class action

24   complaint in the Sacramento County Superior Court against Renzenberger, Inc. ("Renzenberger"

25   or "defendant"). (See Dkt. 1-3, "State Court Complaint"). On May 17, 2016, defendant removed

26   the case to the Eastern District of California. (See Dkt, 1, Notice of Removal). The parties

27   subsequently stipulated to transfer the case to this District, where a related case, Roderick Wright,

28   et al. v. Renzenberger, Inc., Case No. CV 13-6642 ("Wright"), was pending. (See Dkt. 19, Joint

1    Stipulation to Transfer Action).  The First Amended Complaint ("FAC") asserts claims for:  (1)

2    failure to pay all straight time wages; (2) failure to pay overtime, Cal. Lab. Code §§ 204, 510, 558,

3    1194 & 1198; (3) failure to provide meal periods, Cal. Lab. Code §§ 226.7 & 512, IWC Wage

4    Order Nos. 9-1998, 9-2000, 9-2001(11), Cal. Code Regs., Tit. 8 § 11090; (4) failure to authorize

5    and permit rest periods, Cal. Lab. Code §§ 226.7, IWC Wage Order Nos. 9-1998, 9-2000, 9-

6    2001(12), Cal Code Regs. Tit. 8 § 11090; (5)  failure to provide properly itemized wage

7    statements, Cal. Lab. Code §§ 226, 1174, 1175; (6) failure to pay all wages due at the termination

8    of employment, Cal. Lab. §§ 201-03; (7) penalties pursuant to the Private Attorneys General Act

9    of 2004 ("PAGA"); and (8) unfair competition, Cal. Bus. & Prof. Code §§ 17200, et seq.  (See Dkt.

10   71, FAC).  In September 2019, plaintiff filed the operative Second Amended Complaint ("SAC"),

11   which added a claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq.

12   (See Dkt. 81, SAC at ¶¶ 162-70).

13          After engaging in discovery and participating in mediation, the parties reached a settlement

14   in September 2018.  (Dkt. 83, Court's Order of December 2, 2019 ("Preliminary Approval Order"

15   or "PAO") at 2).  The parties defined the settlement class as "all persons who are or have been

16   employed by Renzenberger as Drivers in the State of California at any time from April 14, 2012,

17   through the date the Court grants Preliminary Approval ('Class Period')."  (Dkt. 82-3, Stipulation

18   and Settlement of Class Action Claims ("Settlement Agreement") at § B; Dkt. 83, PAO at 2).

19          Pursuant to the settement, Renzenberger will pay a non-reversionary "Gross Settlement

20   Fund" of $2,450,000, which includes payments to class members, attorney's fees and costs, a

21   service award for the class representative, expenses for the administration of the settlement, the

22   PAGA payment to the California Labor & Workforce Development Agency ("the LWDA"),

23   employer-owed payroll taxes on the wage portion of the settlement, and pre- and post-judgment

24   interest.  (See Dkt. 82-3, Settlement Agreement at § H.7; Dkt. 83, PAO at 2).

25          The "Net Settlement Fund" is the amount remaining after employer-owed taxes and

26   payments to class counsel, the class representative, the settlement administrator, and the LWDA.

27   (See Dkt. 82-3, Settlement Agreement at § H.8; Dkt. 83, PAO at 3).  The Net Settlement Fund will

28   be divided into two funds: (1) the Class Payout Fund; and (2) the FLSA Payout Fund.  (Dkt. 82-3,

1    Settlement Agreement at § H.8; Dkt. 83, PAO at 3).  All class members will be paid individual

2    shares out of the Class Payout Fund, but only those members who return a signed FLSA Opt-In

3    Form will receive a payment from the FLSA Payout Fund.  (Dkt. 82-3, Settlement Agreement at

4    § H.8; Dkt. 83, PAO at 3).

5        Under the Settlement Agreement, 90 percent of the Net Settlement Fund will be allocated

6    to the Class Payout Fund, which will be distributed by "dividing the Class Payout Fund by the total

7    of all Class Members' Workweek Figures to arrive at a Per-Workweek Amount[,]" with Workweek

8    Figures calculated by "adding all the calendar days within the inclusive dates of employment

9    [during the Class Period] and dividing that number by seven[,] [with] [a]ny partial workweek . . .

10   rounded up to the nearest full workweek." (Dkt. 82-3, Settlement Agreement at § H.10(b)(ii); Dkt.

11   83, PAO at 3).  The other ten percent of the Net Settlement Fund will be allocated to the FLSA

12   Payout Fund, which will be distributed according to the same formula used to distribute the Class

13   Payout Fund.  (See Dkt. 82-3, Settlement Agreement at § H.10(b)(iii); Dkt. 83, PAO at 3).   Any

14   portion of the FLSA Payout Fund that is unclaimed shall be distributed on a pro-rata basis to those

15   class members who returned timely, valid FLSA Opt-In Forms.  (See Dkt. 82-3, Settlement

16   Agreement at § H.10(b)(iii); Dkt. 83, PAO at 3).[1] Any checks that remain uncashed after 180 days

17   will be sent to the California Unclaimed Wages Fund, and will be deposited in the class member's

18   name so that the class member may claim the funds at a future date.  (See Dkt. 82-3, Settlement

19   Agreement at § H.18(b); Dkt. 83, PAO at 3).

20       On December 2, 2019, the court granted preliminary approval of the settlement, appointed

21   CPT Group Inc. ("CPT") as the settlement administrator, and directed CPT to provide notice to

22   the class members.  (See Dkt. 83, PAO at 21).  Subsequently, CPT implemented the notice

23   program approved by the court, (see Dkt. 87, Motion at 13; Dkt. 87-2, Declaration of Bryan Valdez

24   with Respect to Notification and Settlement Administration ("Valdez Decl.") at ¶¶ 4-11 & Exhs. A

25   (Notice Packet); Dkt. 83, PAO at 18-20 (approving notice program)), and sent notice packets to

26   _____

27       [1] Section H.10(b) of the Settlement Agreement contains two subsection (iii)'s.  (See Dkt. 82-3,
     Settlement Agreement at § H.10(b)).  The citation in the sentence containing this footnote refers
28   to the latter, § H.10.b(iii), which can be found on page 18 of the Settlement Agreement.

1  4,012 class members.[2]  (See Dkt. 87-2, Valdez Decl. at ¶¶ 7-10).  As of July 24, 2020, CPT had

2  received no requests for exclusion and no objections.  (Id. at ¶¶ 13-14; see, generally, Dkt. (no

3  objections filed with the court)).  CPT received 1,299 FLSA Opt-In forms.[3]  (See id. at ¶ 15).

4       Plaintiff now seeks:  (1) final approval of the settlement; (2) attorney's fees and costs; and

5  (3) an incentive payment for plaintiff.  (See Dkt. 87, Motion; Dkt. 84, Fees Motion).

6                                    **LEGAL STANDARD**

7       Federal Rule of Civil Procedure 23 provides that "[t]he claims, issues, or defenses of a

8  certified class . . . may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "The

9  primary concern of [Rule[4] 23(e)] is the protection of th[e] class members, including the named

10  plaintiffs, whose rights may not have been given due regard by the negotiating parties."  Officers

11  for Justice v. Civil Serv. Comm'n of City & Cty. of S.F., 688 F.2d 615, 624 (9th Cir. 1982).

12  Whether to approve a class action settlement is "committed to the sound discretion of the trial

13  judge[,]" Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) (quoting Officers

14  for Justice, 688 F.2d at 625), who must examine the settlement for "overall fairness[.]"  In re

15  Hyundai and Kia Fuel Economy Litig., 926 F.3d 539, 569 (9th Cir. 2019).  The court may not

16  "delete, modify or substitute certain provisions."  Id. (internal quotation marks omitted).  "[T]he

17  settlement must stand or fall as a whole."  Officers for Justice, 688 F.2d at 630.

18       In order to approve a settlement in a class action, the court must conduct a two-step

19  inquiry.[5]  First, the court must determine whether the notice requirements of Rule 23(c)(2)(B) have

20  _____

21  [2] After CPT mailed the notice packets, it was discovered that 584 class members from the
    Wright action had been inadvertently omitted from the instant action.  As a result, and pursuant
22  to order of the court, CPT provided notice packets to the additional class members, and extended
    the deadline for opting out and objecting to the settlement.  (See Dkt. 87-2, Valdez Decl. at ¶¶ 9-
23  10 & Exhs. B-C; Dkt. 86, Court's Order of April 23, 2020).  Ultimately, 99 notice packets were
24  undeliverable.  (See Dkt. 87-2, Valdez Decl. at ¶ 11).

25  [3] However, two of the individuals who submitted FLSA Opt-In forms failed to sign or date the
    form, and failed to respond to CPT's deficiency cure letter.  (See Dkt. 87-2, Valdez Decl. at ¶ 15).
26
27  [4] All "Rule" references are to the Federal Rules of Civil Procedure.

28  [5] If the class action is governed by the Class Action Fairness Act ("CAFA"), the court must also
    assess whether CAFA's notice requirements have been met.  See 28 U.S.C. § 1715(d).  Here,

1  been satisfied.  Second, it must conduct a hearing to determine whether the settlement agreement

2  is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2); Staton v. Boeing Co., 327 F.3d 938,

3  959 (9th Cir. 2003) (discussing the Rule 23(e)(2) standard).  In determining whether a settlement

4  is fair, reasonable, and adequate, the court must weigh some or all of the following factors:  "(1)

5  the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further

6  litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered

7  in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the

8  experience and views of counsel; (7) the presence of a governmental participant; and (8) the

9  reaction of the class members of the proposed settlement."[6]  In re Bluetooth Headset Prod. Liab.

10  Litig., 654 F.3d 935, 946 (9th Cir. 2011) (quoting Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566,

11  575 (9th Cir. 2004)); Campbell v. Facebook, Inc., 951 F.3d 1106, 1121 (9th Cir. 2020) (same).[7]

12         However, when "a settlement agreement is negotiated prior to formal class certification,

13  _____

14  CAFA notice was provided, (see Dkt. 63, Declaration of William V. Whelan [] at ¶ 2 & Exh. 1), and
   no objections have been received in response.

15

16   [6]  The 2018 amendments to Rule 23(e) provide further guidance for determining whether a
   settlement is fair, reasonable, and adequate, including whether: "(A) the class representatives and

17  class counsel have adequately represented the class; (B) the proposal was negotiated at arm's
   length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and

18  delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the
   class, including the method of processing class-member claims; (iii) the terms of any proposed

19  award of attorney's fees, including timing of payment; and (iv) any agreement required to be
   identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to

20  each other." Fed. R. Civ. P. 23(e)(2).  The Advisory Committee notes to the 2018 amendments
   state that "[t]he goal of [the] amendment [was] not to displace any factor" courts considered prior

21  to the amendment, "but rather to focus . . . on the core concerns of procedure and substance that
   should guide the decision whether to approve the proposal."  2018 Adv. Comm. Notes to Rule

22  23(e).  The court addressed several of the factors set forth in the amended Rule 23(e) during the
   preliminary approval process.  (See, e.g., Dkt. 83, PAO at 14-15 (considering whether the

23  settlement was the product of arm's-length negotiations); id. at 16-17 (addressing whether

24  recovery for the class is fair, adequate, and reasonable)).  In evaluating the settlement, the court
   will consider the factors set forth by the Ninth Circuit, while also taking into account the Rule 23(e)

25  amendments.

26

27   [7]  Although the settlement approval in Campbell occurred prior to the 2018 amendments to
   Rule 23(e), the Ninth Circuit noted that applying the amendments would not change its

28  conclusions.  See Campbell, 951 F.3d at 1121 n. 10 (affirming the district court's approval of the
   settlement).

1    consideration of these eight [] factors alone is not enough[.]"  <u>Bluetooth</u>, 654 F.3d at 946

2    (emphasis in original).  This is because, "[p]rior to formal class certification, there is an even

3    greater potential for a breach of fiduciary duty owed the class during settlement."  <u>Id.</u>; <u>see</u> <u>Koby</u>

4    <u>v. ARS Nat'l Servs., Inc.</u>, 846 F.3d 1071, 1079 (9th Cir. 2017) ("When, as here, a class settlement

5    is negotiated prior to formal class certification, there is an increased risk that the named plaintiffs

6    and class counsel will breach the fiduciary obligations they owe to the absent class members.").

7    Thus, "such agreements must withstand an even higher level of scrutiny for evidence of collusion

8    or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's

9    approval as fair."  <u>Bluetooth</u>, 654 F.3d at 946.  In assessing such an agreement, courts should

10   look for signs of collusion, subtle or otherwise, including "(1) when counsel receive a

11   disproportionate distribution of the settlement, or when the class receives no monetary distribution

12   but class counsel are amply rewarded[;]" "(2) when the parties negotiate a 'clear sailing'

13   arrangement[;]"[8] and "(3) when the parties arrange for fees not awarded to revert to defendants

14   rather than be added to the class fund[.]"  <u>Id.</u> at 947 (internal quotation marks and citations

15   omitted).

16                                              **<u>DISCUSSION</u>**

17   I.      FINAL APPROVAL OF CLASS SETTLEMENT.

18           A.      <u>Class Certification</u>.

19           In its order granting preliminary approval, the court certified the class pursuant to Rule

20   23(b)(3).  (<u>See</u> Dkt. 83, PAO at 8-14, 21).  Because circumstances have not changed, the court

21   hereby affirms its order certifying the class for settlement purposes under Rule 23(e).  <u>See, e.g.</u>,

22   <u>Gonzalez v. BMC West, LLC</u>, 2018 WL 6318832, *5 (C.D. Cal. 2018) ("In its Preliminary Approval

23   Minute Order, the Court certified the Settlement Class in this matter under Rules 23(a) and

24   23(b)(3).  Accordingly, the Court need not find anew that the settlement class meets the

25

26   _____

27        [8]  The Ninth Circuit defines a "clear sailing" agreement as one "providing for the payment of
     attorneys' fees separate and apart from class funds," <u>Bluetooth</u>, 654 F.3d at 947, and also as one
28   where "the defendant agrees not to oppose a petition for a fee award up to a specified maximum
     value." <u>Id.</u> at 940 n. 6.

1  certification requirements of Rule 23(a) and (b).") (internal quotation marks and citation omitted).

2      B.    Rule 23(c) Notice Requirements.

3      Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule

4  23(c)(2) and, upon settlement of a class action, "[t]he court must direct notice in a reasonable

5  manner to all class members who would be bound by the proposal[.]"  Fed. R. Civ. P. 23(e)(1)(B).

6  Rule 23(c)(2) requires the "best notice that is practicable under the circumstances, including

7  individual notice" of particular information.  See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice

8  requirements for classes certified under Rule 23(b)(3)).

9      After undertaking the required examination, the court approved the form of the proposed

10 class notice.  (See Dkt. 83, PAO at 18-20; see also Dkt. 86, Court's Order of April 23, 2020, at 1

11 (approving supplemental notice)).    Also, as discussed above, the notice program was

12 implemented by CPT.  Accordingly, based on the record and its prior findings, the court finds that

13 the class notice and the notice process fairly and adequately informed the class members of the

14 nature of the action, the terms of the proposed settlement, the effect of the action and release of

15 claims, the class members' right to exclude themselves from the action, and their right to object

16 to the proposed settlement.  (See Dkt. 83, PAO at 18-20).

17     C.    Whether the Class Settlement is Fair, Adequate and Reasonable.

18          1.    **The Strength of Plaintiff's Case, and the Risk, Expense, Complexity,**

19                **and Duration of Further Litigation**.

20     In evaluating the strength of the case, the court should assess "objectively the strengths

21 and weaknesses inherent in the litigation and the impact of those considerations on the parties'

22 decisions to reach [a settlement]."  Adoma v. Univ. of Phoenix, Inc., 913 F.Supp.2d 964, 975

23 (E.D. Cal. 2012) (internal quotation marks omitted).  "In assessing the risk, expense, complexity,

24 and likely duration of further litigation, the court evaluates the time and cost required."  Id. at 976.

25     Here, in granting preliminary approval of the settlement, the court recognized that the risks

26 of continued litigation were "significant" and, when weighed against those risks, and the delays

27 associated with continued litigation, the "benefits to the class [fell] within the range of

28 reasonableness."  (See Dkt. 83, PAO at 16).  The settlement here affords class members

1  immediate monetary benefits in the face of delay, various defenses to plaintiff's claims, and

2  defendant's inability to pay a significant damages award. (See id.).  Under the circumstances, the

3  court finds it significant that class members will receive "immediate recovery by way of the

4  compromise to the mere possibility of relief in the future, after protracted and expensive litigation."

5  Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal

6  quotation marks omitted).  In short, the court finds that these factors support approval of the

7  settlement.

8                    2.    **The Risk of Maintaining Class Action Status Through Trial**.

9          Because the parties reached settlement prior to the filing of a motion for class certification,

10  plaintiff faced a risk that the class would not be certified.  Accordingly, this factor weighs in favor

11  of approving the settlement.  See, e.g., Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 966 (9th Cir.

12  2009) ("At the time of settlement, the risk remained that the nationwide class might be

13  decertified[.]"); Rosado v. Ebay Inc., 2016 WL 3401987, *4 (N.D. Cal. 2016) ("Although a class

14  can be certified for settlement purposes, the notion that a district court could decertify a class at

15  any time is an inescapable and weighty risk that weighs in favor of a settlement.").

16                    3.    **The Amount Offered in Settlement**.

17          "[T]he very essence of a settlement is compromise, a yielding of absolutes and an

18  abandoning of highest hopes."  Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir.

19  1998) (internal quotation marks omitted).  In granting preliminary approval, the court concluded

20  that the settlement was fair, adequate, and reasonable in light of the litigation risks in the case and

21  defendant's inability to pay a large judgment. (See Dkt. 83, PAO at 16); see also Linney, 151 F.3d

22  at 1242 ("The fact that a proposed settlement may only amount to a fraction of the potential

23  recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and

24  should be disapproved.") (internal quotation marks omitted).  Accordingly, this factor also weighs

25  in favor of final approval.

26                    4.    **The Extent of Discovery Completed and the Stage of Proceedings**.

27          "A court is more likely to approve a settlement if most of the discovery is completed

28  because it suggests that the parties arrived at a compromise based on a full understanding of the

1    legal and factual issues surrounding the case." Spann v. J.C. Penney Corp., 211 F.Supp.3d

2    1244, 1256 (C.D. Cal. 2016) (quoting Nat'l Rural Telecomms., 221 F.R.D. at 527).  The court

3    previously examined these factors at length, noting that the parties had engaged in discovery,

4    including the depositions of plaintiff, plaintiff's expert, and defendant's 30(b)(6) witness, (see Dkt.

5    83, PAO at 15), and "thoroughly investigated and considered their own and the opposing parties'

6    positions[,]" (id.), which enabled them to develop "a sound basis for measuring the terms of the

7    settlement against the risks of continued litigation[.]"  (Id.).  In other words, "the parties entered

8    the settlement discussions with a substantial understanding of the factual and legal issues from

9    which they could advocate for their respective positions." Spann, 211 F.Supp.3d at 1256;

10   Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 447 (E.D. Cal. 2013) ("What is required is

11   that sufficient discovery has been taken or investigation completed to enable counsel and the

12   court to act intelligently.") (internal quotation marks omitted).

13              5.    **The Experience and Views of Counsel**.

14        "Great weight is accorded to the recommendation of counsel, who are most closely

15   acquainted with the facts of the underlying litigation.  This is because parties represented by

16   competent counsel are better positioned than courts to produce a settlement that fairly reflects

17   each party's expected outcome in the litigation." Spann, 211 F.Supp.3d at 1257 (internal

18   quotation marks omitted); see Fed. R. Civ. P. 23(e)(2)(A) (courts should consider whether "class

19   counsel have adequately represented the class").  Here, class counsel, who adequately

20   represented the class, (see Dkt. 83, PAO at 11), view the settlement as "fair, reasonable, and

21   adequate[,]" and "in the best interests of the class[.]"  (Dkt. 87-1, Declaration of David Mara, Esq.

22   in Support of Plaintiff's Motion for Final Approval of Class Action Settlement ("Mara Decl.") at ¶

23   11).  Thus, this factor also supports approval of the settlement.

24              6.    **The Presence of a Governmental Participant**.

25        There is no government participant in this matter.  Accordingly, this factor is inapplicable.

26   See Spann, 211 F.Supp.3d at 1257 (concluding "[t]here is no government participant in this

27   matter[,]" rendering "this factor [] not relevant.").

28

1          7.      **The Reaction of Class Members to the Proposed Settlement**.

2          The absence of a large number of objections and exclusions to a proposed class action

3    settlement supports approval of a settlement.  See Spann, 211 F.Supp.3d at 1257 ("It is

4    established that the absence of a large number of objections to a proposed class action

5    settlement raises a strong presumption that the terms of a proposed class settlement action are

6    favorable to the class members.").  Here, the reaction of the class has been very positive, as there

7    were no requests for exclusion or any objections to the settlement.  (See Dkt. 87-2, Valdez Decl.

8    at ¶¶ 13-14); (see, generally, Dkt.) (no objections filed with the court).  The lack of objections and

9    requests for exclusion support approval of the settlement.  See, e.g., Franco v. Ruiz Food Prods.,

10   Inc., 2012 WL 5941801, *14 (E.D. Cal. 2012) (finding this factor weighed in favor of approval

11   where only two out of 2,055 class members – less than one percent – opted out, and there were

12   no objections to the settlement); Gong-Chun v. Aetna Inc., 2012 WL 2872788, *16 (E.D. Cal.

13   2012) (settlement approved when less than two percent of the class members opted out and no

14   objections were received); Barcia v. Contain-A-Way, Inc., 2009 WL 587844, *4 (S.D. Cal. 2009)

15   (finding this factor weighed in favor of approval of settlement when there were only 56 opt-outs

16   out of the 2,385 class members and there were no objections).

17         D.     Whether there are Signs of Collusion.

18         "When, as here, the settlement was negotiated before the district court certified the class,

19   there is an even greater potential for a breach of fiduciary duty by class counsel, so [the Ninth

20   Circuit] require[s] the district court to undertake an additional search for more subtle signs that

21   class counsel have allowed pursuit of their own self-interests and that of certain class members

22   to infect the negotiations."  In re Volkswagen "Clean Diesel" Mktg. Litig., 895 F.3d 597, 610-11

23   (9th Cir. 2018) (internal quotation marks omitted).  In granting preliminary approval of the

24   settlement, the court carefully scrutinized the settlement and determined that it was the product

25   of arms-length negotiations, (see Dkt. 83, PAO at 14-15), and that there was "no evidence that

26   the settlement [was] 'the product of fraud or overreaching by, or collusion between, the negotiating

27   parties[.]'"  (Id. at 15) (quoting Rodriguez, 563 F.3d at 965).

28         Nothing has changed since preliminary approval to raise any red flags or "subtle signs" of

1    collusion.  No funds will revert to defendant, (see Dkt. 83, PAO at 2), and although the Settlement

2    Agreement includes a clear sailing provision, (see Dkt. 82-3, Settlement Agreement at § H.12(a)),

3    the court is persuaded that the provision does not undermine the fairness of the settlement.  See

4    Bluetooth, 654 F.3d at 948.  Moreover, any fees not awarded to class counsel will be added to

5    the settlement fund from which payments to class members will be made.  See Russell v. Kohl's

6    Dep't Stores, Inc., 755 F.Appx. 605, 608 (9th Cir. 2018) (concluding that existence of clear sailing

7    provision did not undermine settlement in part because class counsel's fees "would come from

8    a common fund" and "fees not awarded to counsel . . . would not revert" to defendant).

9           In short, the court finds that the settlement is fair, reasonable, and adequate, and not the

10   product of collusion.

11   II.    ATTORNEY'S FEES, COSTS, AND SERVICE AWARD.

12          The Settlement Agreement provides that defendant will not oppose class counsel's request

13   for an award of attorney's fees up to $815,850.  (See Dkt. 82-3, Settlement Agreement at §

14   H.12(a)).  Class counsel now seeks an award of $612,500, which equates to 25% of the gross

15   settlement amount.  (See Dkt. 84, Fees Motion at 2).

16          A.    Attorney's Fees.

17          Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable

18   attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."

19   Fed. R. Civ. P. 23(h).  In diversity actions such as this one, the Ninth Circuit applies state law to

20   determine the right to fees and the method for calculating fees.  See Mangold v. Cal. Public Util.

21   Commc'n, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Existing Ninth Circuit precedent has applied state

22   law in determining not only the right to fees, but also in the method of calculating the fees.");

23   Rodriguez v. Disner, 688 F.3d 645, 653 n. 6 (9th Cir. 2012) ("If . . . we were exercising our

24   diversity jurisdiction, state law would control whether an attorney is entitled to fees and the method

25   of calculating such fees.").  However, courts "may still look to federal authority for guidance in

26   awarding attorneys' fees."  Black v. T-Mobile USA, Inc., 2019 WL 3323087, *5 (N.D. Cal. 2019)

27   (citing Apple Computer, Inc. v. Sup. Ct., 126 Cal.App.4th 1253, 1264 n. 4 (2005)).

28          The Ninth Circuit and the California Supreme Court have both held that trial courts have

the discretion to choose among two different methods for calculating a reasonable attorney's fees award.  See Laffitte v. Robert Half Int'l Inc., 1 Cal.5th 480, 504 (2016) ("The choice of a fee calculation method is generally one within the discretion of the trial court, the goal under either the percentage or lodestar approach being the award of a reasonable fee to compensate counsel for their efforts."); Bluetooth, 654 F.3d at 942 (noting that "courts have discretion to employ either the lodestar method or the percentage-of-recovery method").  "The lodestar method, or more accurately the lodestar-multiplier method, calculates the fee by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate.  Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented."  Laffitte, 1 Cal.5th at 489 (internal quotation marks omitted); see also In re Hyundai, 926 F.3d at 570.  In the alternative, "[t]he percentage method calculates the fee as a percentage share of a recovered common fund or the monetary value of plaintiffs' recovery."  Laffitte, 1 Cal.5th at 489; see also Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998); In re Hyundai, 926 F.3d at 570 (same).

    "Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result."  Bluetooth, 654 F.3d at 942; see Laffitte, 1 Cal.5th at 504.  Here, class counsel seek an award under the percentage-of-fund method, (see Dkt. 84, Fees Motion at 3-10), which the court in its discretion will utilize.  "Under the percentage method, California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent and has endorsed the federal benchmark of 25 percent."  Smith v. CRST Van Expedited, Inc., 2013 WL 163293, *5 (S.D. Cal. 2013); In re Consumer Privacy Cases, 175 Cal.App.4th 545, 557 n. 13 (2009) ("A fee award of 25 percent is the benchmark award that should be given in common fund cases.") (internal quotation and alteration marks omitted); see also Bluetooth, 654 F.3d at 942 (noting benchmark is a reasonable fee award); In re Hyundai, 926 F.3d at 570-71 (recognizing 25% benchmark and noting that the percentage method is "a rough approximation of a reasonable fee"); see, e.g., Black, 2019 WL

1  3323087, at *6 (utilizing federal 25% benchmark in diversity class action); Lloyd v. Navy Federal

2  Credit Union, 2019 WL 2269958, *13 (S.D. Cal. 2019) (same).

3         The 25% benchmark "can be adjusted upward or downward, depending on the

4  circumstances."  In re Hyundai, 926 F.3d at 570; see Bluetooth, 654 F.3d at 942 ("[C]ourts

5  typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing

6  adequate explanation in the record for any 'special circumstances' justifying a departure.");

7  Stetson v. Grissom, 821 F.3d 1157, 1165 (9th Cir. 2016) (noting that the bench mark is 25%,

8  "which the district court may adjust upward or downward to account for any unusual

9  circumstances involved in the case") (internal quotation marks and alterations omitted); Six (6)

10 Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990) ("The

11 benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special

12 circumstances indicate that the percentage recovery would be either too small or too large in light

13 of the hours devoted to the case or other relevant factors.").  In determining whether to depart

14 from the 25% benchmark, courts consider "all of the circumstances of the case[,]" including: (1)

15 the results achieved for the class; (2) the risk of litigation; (3) the skill required and quality of work;

16 (4) the contingent nature of the fee; and (5) awards made in similar cases.  See Vizcaino v.

17 Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002); Viceral v. Mistras Group, Inc., 2017 WL

18 661352, *3 (N.D. Cal. 2017) (utilizing similar factors); In re Online DVD-Rental Antitrust Litig., 779

19 F.3d 934, 955 (9th Cir. 2015) (explaining that "there are no doubt many factors that a court could

20 apply in assessing an attorneys fees award" and that "Vizcaino does not purport to establish an

21 exhaustive list").  Under the circumstances of this case, the court finds that counsel's request for

22 an award of $612,500, which equates to 25% of the common fund, is reasonable.  See In re

23 Hyundai, 926 F.3d at 570-71 (recognizing the 25% benchmark and noting that the percentage of

24 the fund is "a rough approximation of a reasonable fee").

25         B.    Costs.

26         The court finds that the costs incurred by class counsel over the course of this litigation are

27 reasonable, and therefore awards a total of $26,589.68 in costs.  (See Dkt. 84, Fees Motion at

28 12; Dkt. 84-1, Declaration of David Mara in Support of Plaintiff's Motion for Attorneys' Fees, Costs,

1  and Class Representative Enhancement at ¶ 18 & Exh. 1 at ECF 2295).

2          C.    Class Representative Service Award.

3          "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs,

4  are eligible for reasonable incentive payments." Staton, 327 F.3d at 977; see Wren v. RGIS

5  Inventory Specialists, 2011 WL 1230826, *31 (N.D. Cal. 2011) ("It is well-established in this circuit

6  that named plaintiffs in a class action are eligible for reasonable incentive payments, also known

7  as service awards."). Here, plaintiff requests that the court grant a service award in the amount

8  of $5,000. (See Dkt. 84, Fees Motion at 13). Such an incentive award is presumptively

9  reasonable, see Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 335 (N.D. Cal. 2014) (finding

10  an incentive award of $5,000 presumptively reasonable), and the court finds that it does not

11  create a conflict of interest between plaintiff and class members. See, e.g., In re Online DVD-

12  Rental, 779 F.3d at 947-48 (upholding reasonableness of $5,000 incentive awards that were

13  roughly 417 times larger than $12 individual awards because the number of representatives was

14  relatively small, and the total amount of incentive awards "ma[de] up a mere .17% of the total

15  settlement fund").

16                              **CONCLUSION**

17          Based on the foregoing, IT IS ORDERED THAT:

18          1.  Plaintiff's Motion for Final Approval of Class Action Settlement, **(Document No. 87)** is

19  **granted** as set forth herein.

20          2.  The court hereby **grants final approval** to the parties' Stipulation and Settlement of

21  Class Action Claims ("Settlement Agreement") (Document No. 82-3). The court finds that the

22  Settlement Agreement is fair, adequate and reasonable, appears to be the product of arm's-length

23  and informed negotiations, and treats all members of the class fairly. The parties are ordered to

24  perform their obligations pursuant to the terms of the Settlement Agreement and this Order.

25          3.  Plaintiff's Motion for Attorneys' Fees, Costs, and Class Representative Enhancement

26  **(Document No. 84)** is **granted** as set forth herein.

27          4.  The settlement class is certified under Federal Rule of Civil Procedure 23(c) as defined

28  in § B. of the Settlement Agreement.

5.  The form, manner, and content of the Class Notice meet the requirements of Federal Rules of Civil Procedure 23(c)(2).

6.  Plaintiff Kristina McConville shall be paid a service payment of $5,000 in accordance with the terms of the Settlement Agreement and this Order.

7.  Class counsel shall be paid $612,500 in attorney's fees, and $26,589.68 in costs in accordance with the terms of the Settlement Agreement and this Order.

8.  The Claims Administrator, CPT, shall be paid for its fees and expenses in accordance with the terms of the Settlement Agreement.

9.  The LWDA shall be paid $75,000 pursuant to the Settlement Agreement and this Order.

10.  All class members who did not validly and timely request exclusion from the settlement have released their claims, as set forth in the Settlement Agreement, against any of the released parties (as defined in the Settlement Agreement).

11.  Except as to any class members who have validly and timely requested exclusion, this action is **dismissed with prejudice**, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of the court.

12.  Without affecting the finality of this Order in any way, the court hereby retains jurisdiction over the parties, including class members, for the purpose of construing, enforcing, and administering the Order and Judgment, as well as the Settlement Agreement itself.

13.  Judgment shall be entered accordingly.

Dated this 24th day of August, 2020.

/s/
Fernando M. Olguin
United States District Judge